UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| United States of America, | Case No.: 2:13-cr-00085-JAD-PAL-2 |
|---|---|
| Plaintiff | |
| v. | **Order Denying Motion for Compassionate Release but Granting in Part Motion for Sentence Reduction** |
| Marco Antonio Caballero-Perez, | |
| Defendant | [ECF No. 168, 179] |

Marco Antonio Caballero-Perez is roughly 10 years into his 20-year sentence for distributing methamphetamine in violation of 21 U.S.C. § 841. Caballero-Perez's 20-year statutory mandatory minimum sentence was achieved through an enhancement for his prior drug conviction in Colorado. He now asks this court to grant him compassionate release based on the COVID-19 pandemic or to reduce his sentence because changes to 21 U.S.C. §§ 841 and 851 and the statute he was convicted under in Colorado would only expose him to a 10-year mandatory-minimum sentence today. Although Caballero-Perez has not provided a meritorious basis for compassionate release, I find that a sentence reduction is warranted in light of recent statutory developments. So I deny the motion for compassionate release but reduce Caballero-Perez's custodial sentence from 240 months to 188 months.

## Background

An undercover officer purchased methamphetamine from Caballero-Perez's co-defendant, Cruz Albert Lafarga, several times between 2012 and 2013.[1] On one such occasion in February 2013, the undercover officer arranged to meet Lafarga in the parking lot of a Taco

---

[1] Presentence-investigation report (PSR) at 5–7.

Bell.[2]  Caballero-Perez followed Lafarga in a separate car for security purposes, and Lafarga exchanged roughly two pounds of methamphetamine with the undercover officer.[3]

Six days later, the undercover officer arranged to meet Lafarga again.[4]  Caballero-Perez drove Lafarga to the parking lot of a Famous Dave's restaurant, but both men were arrested as they attempted to enter the restaurant.[5]  Lafarga received 128 months in prison under a plea deal. As Caballero-Perez proceeded to trial, the government notified him that it would pursue a sentence enhancement under 21 U.S.C. §§ 841 and 851 because of a prior felony conviction Caballero-Perez received in Colorado, resulting in a statutory mandatory minimum sentence of 20 years for his charge.[6]

In March 2014, a jury convicted then 28-year-old Caballero-Perez on one count of distribution of methamphetamine.[7]  His Colorado conviction gave him one criminal-history point, but two points were added because he had been on probation for that conviction when he committed the instant federal offense.  His three criminal-history points gave him a criminal-history category of II.[8]  Because the high purity of the methamphetamine qualified it as ICE, his guideline level was a 36, resulting in a custodial-sentence guideline range of 210–262 months.[9] With the statutory mandatory 20-year minimum, his range amended to 240-262 months.[10]  I

---

[2] *Id*. at ¶ 20.
[3] *Id*. at ¶¶ 21–22.
[4] *Id*. at ¶ 24.
[5] *Id*. at ¶ 26.
[6] *Id*. at ¶¶ 3, 70.
[7] ECF No. 105 (jury verdict).
[8] ECF No. 142 at 7:3–12 (transcript of sentencing hearing).
[9] *Id*. at 8.
[10] *Id*.

2

sentenced Caballero-Perez to the statutory mandatory minimum 240 months in prison, followed by 10 years of supervised release,[11] and he is currently serving his sentence at USP Lompoc.

**Discussion**

A sentencing court's ability to modify or reduce a sentence once it's imposed is seriously limited.[12] 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018,[13] is an exception to this limitation. It allows the sentencing judge to reduce a sentence based on "extraordinary and compelling reasons" after the defendant has asked the Bureau of Prisons (BOP) to bring such a motion on his behalf and exhausted all administrative rights to appeal the BOP's denial of that request.[14] The court must consider the factors in 18 U.S.C. § 3553(a) "to the extent that they are applicable," and any sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission."[15]

Although the Sentencing Commission provided a policy statement for compassionate release that describes "extraordinary and compelling reasons,"[16] the Ninth Circuit held that it "is not an applicable policy statement for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant."[17] So with no applicable policy statement, "district courts are empowered to consider

---

[11] ECF No. 125 (judgment).

[12] *See United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003) (exploring Federal Rules of Criminal Procedure 35 and 36); 18 U.S.C. § 3582(c).

[13] The First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018).

[14] 18 U.S.C. § 3582(c)(1)(A)(i).

[15] *Id*.

[16] U.S. Sent'g Guidelines Manual § 1B1.13, cmt. n.1 (identifying four categories of situations that qualify as extraordinary and compelling circumstances: serious medical conditions, advanced age, family circumstances, and a catch-all "other reasons").

[17] *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021).

any extraordinary and compelling reason for release that a defendant might raise."[18]  "Congress has only placed two limitations directly on extraordinary and compelling reasons: the requirement that district courts are bound by the Sentencing Commission's policy statement, which does not apply here, and the requirement that rehabilitation alone is not extraordinary and compelling."[19]  A court may also "consider non-retroactive changes in sentencing law, in combination with other factors particular to the individual defendant, when analyzing extraordinary and compelling reasons for purposes of § 3582(c)(1)(A)."[20]

While compassionate release and a sentence reduction require the same analysis under § 3582(c)(1)(A), their remedies differ.  A sentence reduction under a compassionate-release statute permits a court to modify a term of imprisonment and grant early and immediate release from custody.[21]  A sentence reduction more broadly permits a court to modify a term of imprisonment of any magnitude in accordance with § 3582(c) and § 3553(a).  The reduction can be minor or substantial and may be tailored to a defendant's specific circumstances.[22]

**A.     Caballero-Perez exhausted his administrative remedies.**

To request compassionate release from the BOP, an inmate must first submit a request to the warden that complies with 28 C.F.R. § 571.61.[23]  If the BOP fails to bring a motion on behalf of the inmate and 30 days have lapsed from the warden's receipt of his request, a court may

---

[18] *Id.* at 801 (quoting *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020)).
[19] *United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022) (cleaned up).
[20] *Id.*
[21] David Debold, *Practice Under the Federal Sentencing Guidelines* § 10.06 (6th ed. 2023-2 Supp. 2010).
[22] *See* 18 U.S.C. § 3582(c); 18 U.S.C. § 3553(a).
[23] 18 U.S.C. § 3582(c)(1)(A).

entertain the inmate's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).[24] The parties do not dispute that Caballero-Perez submitted a request to his warden for compassionate release on September 12, 2022, and filed his timely motion for a reduced sentence on January 3, 2023.[25] Because the government does not challenge Caballero-Perez's compliance with this requirement,[26] I find that he has exhausted his administrative remedies.

### B. COVID-19 is not an extraordinary or compelling reason to reduce Caballero-Perez's sentence.

In Caballero-Perez's pro se motion, he argues that the risk of COVID-19 increased when the Omicron subvariant emerged, resulting in an extraordinary and compelling reason to reduce his sentence.[27] Caballero-Perez cites to six BOP press releases and theorizes that, because other inmates have died from COVID-19 complications in BOP custody, a similar fate awaits him.[28] The government contends that incarceration during the COVID-19 pandemic, without any underlying health conditions that place Caballero-Perez at a greater risk of illness, is not an extraordinary or compelling reason to reduce his sentence.[29]

Although the COVID-19 pandemic was undeniably grave and its effect on every aspect of American life was unprecedented, its impact at USP Lompoc is currently minimal. The BOP's website reflects that there are currently just three open cases of COVID-19 at USP

---

[24] *Id.*

[25] ECF No. 168 at 23.

[26] *United States v. Keller*, 2 F.4th 1278, 1282 (9th Cir. 2021) (holding "that § 3582(c)(1)(A)'s administrative exhaustion requirement is mandatory and must be enforced *when properly raised by the government*) (emphasis added).

[27] ECF No. 168 at 13–15.

[28] *Id.* at 13–14.

[29] ECF No. 180 at 5.

5

Lompoc, which maintains a total population of 2,603 inmates.[30] And of those inmates, more than half are vaccinated.[31] Caballero-Perez also does not contend that he has any serious medical conditions that would put him at a greater risk of contracting the virus, nor any specific health concerns that would exacerbate a COVID-19 infection to something more serious. So I do not find that COVID-19 is an extraordinary or compelling reason to justify a reduced sentence or compassionate release in his case.

### C. The changes in sentencing laws constitute an extraordinary and compelling reason to reduce Caballero-Perez's sentence—but not to the degree he seeks.

In Caballero-Perez's counseled motion for compassionate release, he argues that the changes in sentencing schemes under §§ 841(b)(1)(A) and 851, and the change to the statute he was convicted under in Colorado, constitute extraordinary and compelling reasons to reduce his sentence. While the government doesn't directly respond to whether the changes in sentencing laws constitute an extraordinary or compelling reason to reduce Caballero-Perez's sentence, it does "concede" in a footnote that his prior conviction no longer qualifies as a "serious drug felony" under § 841(b).[32] Caballero-Perez contends that these changes justify a reduction of his custodial sentence from 240 months down to time served, which would essentially cut it in half and bring it into parity with that of his co-defendant Lafarga.

---

[30] *Inmate COVID-19 Data*, Federal Bureau of Prisons (Oct. 24, 2023), https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp.

[31] *Id.*

[32] ECF No. 180 at 8 n.3.

1.   ***Both the statute of conviction and the statute under which Caballero-Perez sustained his prior state conviction have been favorably amended.***

Congress enacted the First Step Act of 2018 after "several years of congressional debate about . . . reduc[ing] the size of the federal prison population while also create[ing] mechanisms to maintain public safety."[33] In an attempt to address harsh mandatory minimums for nonviolent drug offenses, the act lowered the minimum sentence for defendants with prior drug convictions from 20 years to 15 years.[34] It also narrowed the types of prior offenses that trigger these enhanced penalties under § 841(b)(1)(A).[35] Before First Step, a prior conviction for a "felony drug offense" that triggered an enhancement included any drug offense punishable by more than one year of imprisonment, regardless of the actual sentence imposed.[36] But § 401(b)(1) of the Act replaced "felony drug offense" with "serious drug felony."[37] A serious drug felony requires that a defendant be imprisoned for more than 12 months, and it only includes drug felonies that carry a maximum sentence of 10 years or more or state law offenses that involve manufacturing, distributing, or possessing with intent to distribute a controlled substance.[38]

Caballero-Perez's federal statute of conviction wasn't the only one that changed. Colorado has also since amended CRS § 18-18-403.5(2)(b)(I), the statute upon which he sustained his state-court drug conviction, and which gave him a criminal-history score of II.

---

[33] Cong. Rsch. Serv., R45558, *The First Step Act of 2018: An Overview* (2019), https://crsreports.congress.gov/product/pdf/R/R45558.

[34] *See generally* 164 Cong. Rec. S7649 (daily ed. Dec. 17, 2018); 21 U.S.C. § 841(b)(1)(A).

[35] First Step Act of 2018, Pub. L. No. 115–391, 132 Stat. 5194, 5221.

[36] *Id*.; U.S. Sent'g Comm'n, *The First Step Act of 2018 One Year of Implementation* (2020), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2020/20200831_First-Step-Report.pdf.

[37] First Step Act of 2018, Pub. L. No. 115–391, 132 Stat. 5194, 5221.

[38] *Id*. at 5220; 21 U.S.C. § 802(57); 18 U.S.C. § 924(e)(2)(A).

Possession of two grams or less of methamphetamine is no longer a class-six felony; it may be reduced to a misdemeanor upon completion of a community-based sentence.[39]  The Colorado legislature amended this statute the year after I sent Caballero-Perez to prison for 20 years.[40]

### 2. *Caballero-Perez has shown that the statutory changes are extraordinary and compelling reasons to reduce his 20-year sentence.*

Caballero-Perez offers two reasons that his sentence would be shorter today.  He notes that § 401 of the First Step Act "narrowed the types of prior offenses that trigger mandatory enhanced penalties under §§ 841(b)(1)(A) and 851," and if Caballero-Perez were sentenced today, his prior Colorado drug conviction would not qualify him for an enhanced sentence.[41]  He also points out that the Colorado legislature amended the statute he was convicted under, and if he sustained a conviction under that statute today in Colorado, it would be a level-one misdemeanor instead of a class-six felony.[42]

Both amendments are non-retroactive, so they don't result in his automatic resentencing. So Caballero-Perez argues that the Ninth Circuit permits a district court to consider non-retroactive changes in sentencing laws when it evaluates extraordinary and compelling circumstances for a sentence reduction.[43]  Circuit courts are split on this issue.[44]  To bolster his point, Caballero-Perez asserts that the Sentencing Commission has since proposed amendments

---

[39] S.B. 13-250, 69th Gen. Assemb., Reg. Sess. (Colo. 2013).

[40] *See id.*

[41] ECF No. 179 at 8–9.

[42] *Id.* at 11.

[43] *Id.* at 11–12.

[44] *See Chen*, 48 F.4th at 1096–97 ("The Third, Seventh, and Eighth Circuits have ruled that district courts may not consider [] non-retroactive changes . . . [while] [t]he First, Fourth, and Tenth Circuits, on the other hand, all determined that district courts may consider [] non-retroactive changes to penalty provisions.").

to Congress that also conform with the Ninth Circuit's approach to non-retroactive changes.[45] The government contends that proposed amendments to sentencing laws are not grounds for a sentence reduction.[46] But because courts may consider non-retroactive changes in sentencing laws when evaluating motions for compassionate release and sentence reductions, I find that the changes enacted by First Step are, in fact, extraordinary and compelling reasons to reduce Caballero-Perez's sentence. Although this finding is not dispositive, it does weigh in favor of a sentence reduction.

While Caballero-Perez's prior state-court conviction qualified as a "felony drug offense" sufficient to trigger an enhancement, it no longer meets the criteria of a "serious drug felony" under the First Step Act. In Colorado, Caballero-Perez was convicted of possessing two grams or less of methamphetamine in violation of CRS § 18-18-403.5(2)(b)(I).[47] At that time, possessing 2 grams or less of methamphetamine was a class-6 felony, which carried a maximum sentence of 18 months in prison.[48] Because this offense was punishable by more than one year in prison, it constituted a "felony drug offense" in federal court, exposing Caballero-Perez to a mandatory minimum sentence of 20 years for his federal drug conviction after his 2014 trial.

But First Step now requires that a defendant be imprisoned for more than 12 months for a prior conviction to be considered a "serious drug felony" sufficient to warrant enhanced penalties under §§ 841 and 851. Caballero-Perez was sentenced to two years of probation for his Colorado conviction.[49] His charge also did not involve the manufacturing, distribution, or

---

[45] ECF No. 179 at 17.
[46] ECF No. 180 at 7.
[47] PSR ¶ 48; *see also* ECF No. 179-3 (plea agreement).
[48] S.B. 13-250, 69th Gen. Assemb., Reg. Sess. (Colo. 2013); Colo. Rev. Stat. § 18-1.3-401.
[49] PSR ¶ 48.

possession with intent to distribute methamphetamine and was not punishable by at least ten years in prison. So had Caballero-Perez been sentenced today, his prior conviction would not meet the criteria of a serious drug felony, and he would not qualify for enhanced penalties under §§ 841(b)(1)(A) or 851. With no sentence enhancement, his mandatory statutory minimum sentence would now be 10 years—not 20.[50]

The District of Hawaii's decision in *United States v. Lii* is an example of how district courts are evaluating such statutory changes in compassionate-release motions. Lii pled guilty to three methamphetamine-related offenses in 2006.[51] Two minor drug offenses in his past exposed him to a mandatory-minimum sentence of life in prison, and he moved for compassionate release 15 years into his sentence.[52] The district court found that only one of Lii's prior convictions would constitute a "serious drug felony" after the First Step Act that would trigger a mandatory minimum of 15 years instead of life in prison.[53] Lii was also not a large-scale trafficker: his prior convictions were for possessing and selling small amounts of cocaine and marijuana.[54] And despite four disciplinary actions while in custody, the court held that the Act's sentencing reforms, along with other "individualized circumstances," constituted extraordinary and compelling reasons to reduce Lii's sentence from life in prison to time served.[55]

Similar considerations in the instant case make *Lii* and its favorable outcome persuasive. Although Colorado's amendment to Caballero-Perez's statute of conviction was non-retroactive

---

[50] 21 U.S.C. § 841(b)(1)(A).
[51] *United States v. Lii*, 528 F. Supp. 3d 1153, 1156 (D. Haw. 2021).
[52] *Id*. at 1157–58.
[53] *Id*. at 1161–62.
[54] *Id*. at 1164.
[55] *Id*. at 1165–67.

and would not have affected his mandatory minimum had it occurred before sentencing, it's yet another example of the trend of downward adjustments in sentencing laws for nonviolent drug offenses. Because this court may consider non-retroactive changes in sentencing laws, I find that the difference between Caballero-Perez's current sentence and the sentence he would have received if convicted today is significant enough to constitute an extraordinary and compelling reason to consider reducing his sentence under § 3582(c)(1)(A).

**D.     The § 3553(a) factors weigh in favor of a sentence reduction.**

Courts evaluating a sentence-reduction request must also consider the factors in 18 U.S.C. § 3553(a) "to the extent that they are applicable."[56] Caballero-Perez contends that his minimal criminal history, lack of prison-disciplinary action, rehabilitative efforts, time already served, strong familial support and release plan, and the sentencing disparity between himself and co-defendant Lafarga all weigh in favor of a sentence reduction under § 3553(a).[57] So he requests that I reduce his sentence from 240 months to time served.[58] The government offers only a two-sentences response to this § 3553(a) analysis, highlighting that Caballero-Perez was on "active supervision" from his prior conviction when he was arrested on this current charge, and that little is really known about him because he did not participate in an interview with a probation officer when the presentence-investigation report was prepared.[59]

But I find that a sentence reduction for Caballero-Perez that brings his sentence commensurate with what he would have received under today's sentencing laws and guidelines is warranted under the applicable § 3553(a) factors. I acknowledged the seriousness of

---

[56] 18 U.S.C. § 3582(c)(1)(A).
[57] ECF No. 179 at 18–22.
[58] *Id*. at 22.
[59] ECF No. 180 at 8–9.

Caballero-Perez's offense at his sentencing.[60] He accompanied Lafarga on drug transactions, either as his driver or following in a separate car for security purposes.[61] But his offense was also nonviolent, as was his prior conviction in Colorado for possessing two grams of methamphetamine—now considered a misdemeanor.

I also acknowledged at sentencing Caballero-Perez's supportive family.[62] He asserts that he has strong family ties in Las Vegas and Mexico.[63] And because he is under an ICE detainer and may face removal to Mexico, he notes that he has strong release plans for both locations.[64] I find that the nature and circumstances of his offense and his history and characteristics weigh in favor of a sentence reduction.

The kinds-of-sentences-available factor is the one that most heavily weighs in favor of a reduction. When I sentenced Caballero-Perez in 2014, the government pursued a sentencing enhancement under §§ 841(b)(1)(A) and 851 that required a mandatory-minimum sentence of 20 years. The same sentencing enhancement now requires a mandatory-minimum sentence of just 15 years. And if I account for the change in qualifying prior convictions under the First Step Act, the mandatory minimum drops to just ten years.

Less persuasive for me is the sentence-disparity factor. Yes, Lafarga received a far more favorable custodial sentence of 126 months.[65] But Lafarga pled guilty before trial, entitling him to more beneficial sentencing treatment than Caballero-Perez, who put the government to its

---

[60] ECF No. 142 at 14:20–23.
[61] PSR ¶¶ 18, 21, 26.
[62] ECF No. 142 at 14:6–8.
[63] ECF No. 179 at 21.
[64] *Id*. at 21.
[65] ECF No. 113 (Lafarga judgment).

burden at trial. And although Lafarga's role in this drug trafficking was more significant than Caballero-Perez's, Lafarga had no criminal history points and was not on supervision from a prior drug conviction when he and Caballero-Perez engaged in this conduct.[66]

The government argues that this sentence disparity should not be a factor now because it was known at Caballero-Perez's sentencing,[67] relying on the Sixth Circuit's holding that such a disparity cannot be a basis for reduction if it existed at the time of sentencing.[68] But as Caballero-Perez asserts in his reply, the Sixth Circuit approaches sentence reductions differently than the Ninth Circuit—notably, it does not consider non-retroactive changes in sentencing laws when deciding motions for sentence reductions or compassionate release.[69] While I do not find the Sixth Circuit's precedent particularly persuasive, I do find the commentary in the sentencing guidelines informative. It states that an "extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction" in a defendant's sentence.[70] So I take this factor into consideration, although I don't find it particularly weighty in this case.

It is the disparity between today's sentencing laws and those in place at the time of Caballero-Perez's conviction that is more compelling because the statutory mandatory term of imprisonment has been cut in half. Defendants who are similarly situated to Caballero-Perez will be subject today to a 10-year mandatory minimum instead of his 20-year one. Adjusting his

---

[66] ECF No. 122 at 9 (transcript of Lafarga's sentencing hearing).
[67] ECF No. 180 at 6.
[68] *Id*. at 6.
[69] ECF No. 181 at 2–4; *Chen*, 48 F.4th at 1098.
[70] U.S. Sent'g Guidelines Manual § 1B1.13 cmt. n.2 (U.S. Sent'g Comm'n 2021).

sentence in light of these changes will avoid unwarranted sentence disparities.  So I find that factor six also weighs in favor of a sentence reduction.

　　　　Although these factors, on balance, tip the scale towards a sentencing reduction, I do not find that a reduction all the way down to time served is sufficient but not greater than necessary to accomplish the goals and objectives of sentencing.  Caballero-Perez has been in custody on this offense since February 26, 2013, so a time-served sentence would take him down from a 240-month sentence to a 128-month one.  But such a reduction is not commensurate with the sentencing-law changes that justify a reduction for Caballero-Perez.  Caballero-Perez was convicted of selling about two pounds of ICE methamphetamine, the highest quality and purest form of the drug, establishing a base offense level of 38.[71]  At sentencing, the government recommended a two-level reduction to his offense level, so I calculated his sentence using the base offense level of 36.[72]  Caballero-Perez engaged in this drug trafficking just months after being convicted on another drug offense in Colorado and while on supervision for it.  Although the change to the statute that he was convicted under in Colorado lowers his criminal history category from II to I, his total offense level remains the same.  Today, his custodial guideline range would be 188–235 months.  And because I would not be bound by a 240-month statutory mandatory minimum, I could sentence him to the low end of that guideline range.

　　　　But I don't find that a variance below the guideline range is justified.  Caballero-Perez went to trial and was found guilty of his offense, so he lost the benefits of reductions to his guideline calculations that he might otherwise have received.  While 20 years is no longer the floor, the guidelines still remain high because of the quantity and quality of trafficked

---

[71] PCR ¶ 32–33, 38.

[72] ECF No. 142 at 8:10–18.

14

methamphetamine. And though the statute under which Caballero-Perez was convicted for his prior Colorado offense has been favorably amended, I cannot overlook the reality that, unlike his codefendant Lafarga, Caballero-Perez had already sustained a drug conviction and was on supervision for that conviction when he engaged in the drug trafficking for which he is now imprisoned. Given the nature and circumstances of Caballero-Perez's offense, his criminal history, and the favorable weight of the § 3553(a) factors, I grant a reduction in his sentence from 240 months down to 188 months, followed by the 10 years of supervised release that I previously imposed.

## Conclusion

Caballero-Perez's case is a novel one because of the comprehensive changes to the statutes that drove his 20-year mandatory minimum sentence for a non-violent drug-trafficking offense. I find that these changes constitute extraordinary and compelling reasons to reduce Caballero-Perez's sentence, and the § 3553(a) factors weigh in favor of a reduced sentence commensurate with the one he would have received if he had instead been sentenced today.

IT IS THEREFORE ORDERED that Caballero-Perez's motion to reduce his sentence **[ECF No. 168] is GRANTED in part**, and his motion for companionate release **[ECF No. 179] is DENIED**. Caballero-Perez's sentence is reduced to 188 months in custody, followed by the previously-imposed 10-year term of supervised release.[73]

_____
U.S. District Judge Jennifer A. Dorsey
October 25, 2023

---

[73] The supervised-release portion of the judgment is unchanged from the original sentence.